## BRINTON'S ESTATE.

Where executors brought suit on a bond of the husband of a legatee, and it was finally decided that the bond was released by the will, they cannot set it up as a defence to the payment of a legacy in the Orphans' Court. *Query*, whether the evidence offered was admissible to affect the legal implication of a release by the words of the will.

Executors are chargeable with interest on the balance of the last account settled by them in the Orphans' Court, although it was in part made up of interest on the balance of a former account there settled.

The subject of commissions is closed by the settlement of the administration account, so that the executors cannot claim commissions on charges there made or on interest charged at the settlement of the distribution account on the balance of the administration account.

Executors pay costs incurred by litigating matters before auditors for distribution, which have been adjudicated.

Executors cannot object that the husband alone petitions for the payment of his wife's legacy—it not being her separate estate, nor any objection made by her.

FROM the Orphans' Court of Lancaster.

In 1837, William Brinton, by his will, bequeathed "to my daughter Elizabeth, wife of James Smith (exclusive of what I advanced to her and her husband, shortly after their marriage, in money, furniture, &c., and of the money her husband has since received from me, and part of it never refunded), $3,325, to be paid to her in one year after my decease." He gave legacies to his other children, and the residue he bequeathed among his five daughters. In 1837, and on October 4th, 1841, he made several codicils, but there was no allusion in them to the legacy to his daughter Elizabeth, or the indebtedness of her husband.

On the 21st August, 1843, the executors settled an account, which exhibited a balance for distribution of $12,254.12. In this they charged themselves with a bond by James Smith to the testator, with interest from April 1, 1841, for $2,793, and his note

to the same, dated April 1, 1841, for $139. This was given for interest then accrued on the bond. They also took credit for these and other securities included in the account, which had not been collected.

In 1847, they settled a supplemental account, in which they charged themselves with the balance of the former account, and claimed credit for certain expenses. The balance for distribution was $11,519.88. Auditors were appointed, who charged the executors with interest on the balance of the former account from the date of its confirmation *nisi*, and also with certain debts due to the estate: there being no evidence to justify the allowance of a further credit for these amounts. The balance thus resulting was $20,282.47. After this report was confirmed, James Smith petitioned the Orphans' Court to decree payment of the legacy bequeathed to his wife. Auditors were appointed to report the facts and a distribution account. The executors, before the auditors, offered in evidence the bond and note of James Smith, being the same which were the subject of the suit of Coale *v.* Smith, 4 Barr, 377. It was there decided these debts were released by the will: on that ground the auditors rejected them.

The auditors, in settling the account, charged the executors with interest on the balance of the supplemental account, settled in 1847. They also allowed them commissions on the bond of Smith, and of two of the debtors whose bonds were charged in the account settled in 1847; also, counsel fees, paid for conducting the investigation before the auditors. The costs of the audit, and the petitioner's and respondent's costs, were ordered to be paid out of the fund. These items were disallowed by the court, excepting so much of the expenses of the audit as were not occasioned by the renewal of the litigation respecting Smith's bond.

The main point arose on the claim by the executors to deduct the amount of this bond and note from the legacy to the wife of the petitioner. The executors, for the purpose of rebutting the intention of the testator, to release this bond, &c., offered to prove by parol testimony: declarations of the intention of the testator to the scrivener, at the making of his will; that petitioner and the testator were not on good terms; that unless the bond was paid, there would be a deficiency of assets to pay the pecuniary legacies, and that the distribution of the testator's estate would be thus rendered unequal; that bonds by the other sons-in-law of the testator existed, not mentioned in the will, and marked by him not to be inventoried; also, the declarations by the petitioner that he

knew the testator had not intended to release this bond, &c.; all of which was rejected.

The court (LEWIS, P. J.) overruled exceptions to the report on this point, because the matter was *res judicata*, and it seemed it was for this reason that the costs of the audit and of the parties growing out of this litigation were ordered to be paid by the executors personally. The commissions were disallowed, because they were, or ought to have been, allowed in the settlement in 1847.

The decree as to the costs, formed the 1st and 2d exceptions. The others were: 3d. In charging the executors with the bonds and notes of two of the debtors. In charging compound interest. In disallowing commissions on interest charged. 4th and 7th. The decision as to Smith's bond.

*Ellmaker* and *Tyson*, for appellants.—If the debts were charged against the executors, they were clearly entitled to commissions thereon. The expenses were necessarily incurred on other grounds than resisting Smith's claim. They are moreover charged with interest on the interest which entered into the former account, which is never allowed: 3 R. 243; if it is, they are entitled to commissions thereon.

The legacy is to the wife, and here the husband alone petitions. She must be a party, and he is bound to make a settlement: 5 Ves. 514; 2 Atk. 419; 4 Hayw. 19; 5 J. C. R. 464: 9 W. 90. The decision in 4 Barr was in an action at law on the petitioner's bond; it does not preclude this inquiry in equity. There are new facts and evidence; these were offered and were admissible, under 6 Barr, 1. The decision in 9 Barr, 374, shows that a distinction is to be taken between a will and codicil, for certain purposes. The words in the will refer to loans there made; here the bond was dated after the will. Part of it was a loan after the date of the will, which was an ademption of the legacy *pro tanto*: 1 Rop. 259; 2 Stor. Eq. § 1111.

*Parke* and *Lewis*, contrà.—Commissions are part of the allowances, on settling an administration account. They cannot again be mooted on a distribution account. Expenses occasioned by the litigation of a matter adjudicated, are clearly chargeable to the executors; these only were charged. The right of the petitioner is in effect decided in 4 Barr, 382; but this is mere *chose in action* of the wife, without a pretence of a separate use, and she makes no objection to the payment to him. As to the evidence offered, it

suffices, that while it is conceded that there has been a final adjudi-
cation, that the petitioner is not liable on the bond, this was an
attempt to revive the liability and use it as a set-off.

*June* 4.   COULTER, J.—The court below were perfectly right in
disallowing the several items of credit to the administrators,
embraced and covered by the sum of $579.19, in the aggregate.
$395 was no doubt considered an adequate allowance for the col-
lection of ·Smith & Walton's bonds, in the settlement of the ·
accounts of the executor, as it most certainly ought to have been.
Then was the proper time for adjusting the matter, as those bonds
were included in the supplementary account.   The allowance for
commissions and trouble to the executors being in the lump, and
apparently sufficiently large, it would be out of time and place to ·
superadd anything now.

It never has been the custom, so far as I know, to make an
allowance for commissions on a proceeding for compelling distribu-
tion.   The amount deemed to be due on settlement is the *substra-
tum* of the proceeding.   The charge for $100, in this proceeding,
for counsel fees, was also inadmissible, because they were paid as
a compensation for conducting proceedings which are in fact a mere
experiment for the benefit of the executors, after a full and final
settlement of their account.   Their last, or supplementary account,
was referred to auditors, upon whose report there was a full hear-
ing and argument by counsel, and the report confirmed first *nisi*,
and then absolutely.   The other items are small in amount, and it
is useless to go over them.   They were rightfully rejected.

This proceeding is on a petition or bill by Smith, to compel payment
of whatever sum remains yet unpaid by the executors of his legacy,
or rather that of himself and wife.   The executors attempt to set
off certain errors in the settlement of their account by the Orphans'
Court.   In this proceeding, the decree of the Orphans' Court,
made on a full hearing, must be considered as conclusive; other-
wise, on every application by each and every legatee and distri-
butee to compel distribution, the account could be overhauled and
resettled.   A very startling proposition this.   This is a col-
lateral proceeding, in which we cannot touch a decree of the
Orphans' Court, except for fraud or want of legal notice, either
actual or statutory, to the party complaining.   If there was any
error, the executor had, and still has a remedy by appeal or bill
of review, as either might be adapted most suitably to their alleged
case.

But the error alleged, is not an error.   The precise matter was adjudicated at law, in the case of Coale *v.* Smith, which underwent the revision of the Supreme Court, 4 Barr, 376.   To give effect to the error assigned in this respect, in relation to their being charged with Smith & Walton's bonds, we should be compelled not only to overset the decree of the Orphans' Court, but also to reverse the case of Coale *v.* Smith, decided by this court.   The bond of Walton was not adjudicated at law; but the circumstances, the nature of the debt, and the relative condition of the parties are identical.

The error assigned as to the competency of Smith to maintain this proceeding in his own name, does not strike us with much force.   In the will of the testator there is no expression, feature, or apparent intent, that the legacy was designed for the separate use of the wife.   But, on the contrary, it is extremely clear that the testator looked upon the man and wife as the general doctrine of the law regards them, " one and indivisible."   The whole will, and the circumstances referred to in it with relation to Smith and wife, make it evident that the testator made the bequest with a knowledge that Smith had a right to reduce the legacy into possession, and make it his own if he chose to do so.

This court will always, under suitable circumstances made known to them in the record, protect the interests and rights of the wife. But she does not, nor does any one on her behalf, interpose any objection.   For all that is known to us, the husband is faithful to his marital obligations, and provides for his wife's support.   The case is, therefore, totally free from the law of that class of cases where the husband abandons and deserts his wife, and yet seeks to recover her *choses in action.*   Under these circumstances, we cannot avert the proceeding of the husband to reduce the legacy into possession.

Compound interest was not charged by the auditors.   They did nothing more, in effect, than charge interest on the sum in the executor's hands, at the time of the final settlement, up to the time of distribution—all of which was right and proper.

Decree affirmed.